UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WENDY LYNN KLOSIN,

                            Plaintiff,

        v.                                                                  **DECISION AND ORDER**
                                                                            12-CV-1092S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.


        1.      Plaintiff Wendy Lynn Klosin challenges an Administrative Law Judge's ("ALJ")

decision, dated July 20, 2011, wherein the ALJ determined that Plaintiff was not disabled

under section 1614(a)(3)(A) of the Social Security Act. Plaintiff protectively filed an

application for supplemental security income on October 31, 2009, alleging a disability

beginning on October 1, 2000.  The July 20, 2011 decision incorporated by reference the

ALJ's August 11, 2009 decision denying a prior April 12, 2007 supplement security income

application by Plaintiff, "except for the findings and conclusions drawn therein," after a

hearing.  She now contends that the ALJ's determination is not based upon substantial

evidence, and reversal is warranted.

        2.      Plaintiff's most recent application was initially denied on February 9, 2010.

 Plaintiff was granted a hearing on that denial and, on June 9, 2011, she testified before

the ALJ.  The ALJ issued a decision denying Plaintiff's application for supplemental

security income on July 20, 2011, and the Appeals Council denied Plaintiff's request for

review on September 14, 2012, rendering the ALJ's determination the final decision of the

Commissioner. Plaintiff filed the instant action on November 8, 2012.

        3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Judgment on

the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of

Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process

to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §

§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this

analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d

119 (1987), and it remains the proper approach for analyzing whether a claimant is

disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work

experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since October 31, 2009, her application date (R. 26);[1] (2)  Plaintiff had the following severe impairments: chronic back pain, obesity, right ankle pain, and loss of hearing (R. 26); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 26-27); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work as defined in 20 F.C.F. 416.967(a)[2] (R. 27-31); and (5) although she had no past relevant work, considering her age, education, experience, and RFC, there were sufficient jobs in the national economy that she could perform.  (R. 31.)

10.     Plaintiff first argues that the ALJ erred at step three when he found that Plaintiff's right ankle impairment was not severe enough to meet Listing 1.02.  This listing calls for a finding of disabled where, as relevant, a claimant has a "major dysfunction of a joint" including a "major peripheral weight-bearing joint (i.e., hip, knee, or ankle)" due to any cause that is characterized by:

gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

---

[1] Citations to the underlying administrative record are designated as "R."

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 CFR Pt. 404, Subpt. P, App. 1, § 1.02(A); see 20 C.F.R. § 404.1520(d) (where an impairment meets or equals a listed impairment, as well as the durational requirement, a claimant will be found disabled).

Plaintiff argues that her ankle injury impairment is "characterized by gross anatomical deformity including instability." (Pl's Mem of Law at 10, Docket No. 10.)  She asserts that the medical records establish that she requires an ankle brace, a cane, and sometimes a walker; had minimal to no range of motion in her right ankle; and was repeatedly noted as having an antalgic gait.  See generally Moore v. Commissioner of Social Sec., No. 13 Civ. 168(KPF)(GWG), 2014 WL 630589, *3 n. 10 (S.D.N.Y. Feb. 18, 2014) (An "antalgic" gait is "a characteristic gait resulting from pain on weightbearing in which the stance phase of [the] gait is shortened on the affected side.") (quoting Stedman's Medical Dictionary 1092 (27th ed. 2000)). The cited records, however, do not establish a consistent use of or need for either an ankle brace or a cane. (See R. 105 (Plaintiff did not use a cane during the ALJ hearing); 271, 273 (although wearing ankle brace during August 2008 exam, Plaintiff did not wear ankle brace to February 2009 examination, no assessment of ankle injury was made during the exam); 269 (Plaintiff reported "us[ing] a cane or walker at times" but did not use cane during May 2009 exam); 318, 440 (treating physician's RFC assessment noted that Plaintiff needed to walk occasionally, but did not require the use of a cane or assistive device).) Plaintiff herself testified that she uses a cane only when she needs to walk "for a very long period of time," such as when she is grocery shopping. (R. 105.) It cannot therefore be concluded that Plaintiff had an inability

to ambulate effectively, as demonstrated by a need for "a walker, two crutches or two canes." (20 CFR Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b).) Further, although her medical records reflect that her gait was affected by pain, (R. 269, 271), two treating physicians indicated that there was no instability of the right ankle found during 2010 exams. (R. 396, 446.)

11.    Plaintiff further contends that the ALJ failed to apply the appropriate legal standards in evaluating the medical evidence, specifically in the failure to give appropriate weight to the opinions of Plaintiff's treating physician Dr. Clerk. A treating physician's opinion is generally given more weight than that of a consultative examiner, and in fact will be given controlling weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(2)).  Here, the ALJ did not give Dr. Clerk's assessments controlling weight as they were:

> not consistent with the consultative examination of Dr. Ramdeen nor the objective medical evidence of only minimal spurring and bulging of the thoracic and lumber spines without any evidence of compression on nerve roots.  Based upon the exaggeration of [Plaintiff's] testimony and minimal actual treatment, more weight is given to the consultative examiner, Dr. Ramdeen[,] and the objective medical evidence of minimal organic damage.

(R. 30-31 (internal citations omitted).)

Dr. Clerk completed two RFC assessments, the first completed in January 2010 (R. 315-319) and the second completed in May 2011. (R. 438-441.)  In January 2010, Dr. Clerk indicated that Plaintiff could stand or walk less than 2 hours per day and sit less than 6 hours per day due to back pain, and was further limited in her ability to lift and carry more than 10 pounds. (R. 318.)  Dr. Clerk's treatment notes from August to November 2009, however, indicate that Plaintiff generally denied any musculoskeletal symptoms and that the objective assessments revealed full ranges of motion in both the upper and lower

extremities. (R. 341, 351, 353, 355, 359.) Although Plaintiff reported lower back pain more frequently during examinations occurring from December 2009 to April 2010, the listed objective findings still indicated full ranges of motion in both the upper and lower extremities. (R. 377, 379, 385-86, 387-88.)  Dr. Clerk notes that Plaintiff had difficulty ambulating in the April 2010 examination notes. (R. 389-90.) Nonetheless, there were no signs of acute distress present during this or the prior examinations, and this observation is not repeated. (R. 341, 351, 353, 355, 359, 377, 379,  385-86, 387-88, 389-90.)  Dr. Clerk's treatment notes therefore reflect much milder objective findings than would support the significant limitations in his first RFC assessment.

In May 2011, Dr. Clerk assessed that Plaintiff's ability to sit or stand without changing positions was limited to only 5 minutes, she could rarely lift less than 10 pounds, had an unspecified reduced range of motion, and her ability to repetitively reach, handle, or finger was significantly limited. (R. 439-41.)  The treatment notes from May 2010 to April 2011, however, continue to reflect unremarkable objective results: Plaintiff appeared well, showed no acute distress, and had a full range of motion in extremities even when back pain was noted. (R. 398-405, 407-16, 426-33.)  Plaintiff's pain was reported to be "well controlled" by and  "well tolerated with pain medication" with medication. (R. 416, 427, 433.)  In light of the inconsistency between the extreme limitations opined by Dr. Clerk in his RFC assessment and the relatively mild objective findings reported in his own treatment notes, the ALJ correctly concluded that these opinions were inconsistent with the objective medical evidence in the record.  (R. 30-31); see Snell, 177 F.3d at 133.

12.     Plaintiff next argues that the ALJ did not apply the correct legal standards in evaluating her credibility.   Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013);

Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).  A

claimant's credibility is properly questioned when his or her reported symptoms are

inconsistent with the evidence, but it is improper to discount a claimant's credibility simply

because those symptoms are inconsistent with an ALJ's predetermined RFC. See Gehm

v. Astrue, No. 3:10-CV-1170, 2013 WL 25976, *5 (N.D.N.Y. Jan. 2, 2013). Here, contrary

to Plaintiff's argument, the ALJ did not improperly question Plaintiff's credibility because

it was inconsistent with a preconceived RFC assessment.   Instead, the reasons for

discounting the severity of the Plaintiff's asserted symptoms are clearly articulated in the

decision.

Initially, the ALJ noted that Plaintiff's poor prior work record precluded a favorable

inference of a motivation to work. (R. 30); see Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir.

1998)  (citing SSR 96-7p, 61 Fed. Reg. 34,483 at 34, 486 (1996)).  Although a poor work

history can support either the truthfulness of a claimant's testimony or a lack of candor,

Schaal, 134 F.3d at 502, here the ALJ continued:

> [I] is noted this is the claimant's fourth application for benefits and most
> recently on August 11, 2009 after a hearing by an Administrative Law Judge
> was found not disabled.  In spite of no additional trauma or filing an appeal
> in that case, the claimant merely filed a new application on October 31,
> 2009.  The claimant testified she did look for work as a grocery store deli
> clerk, which would require capability above her residual functional capacity
> herein and beyond the allegation made regarding her ability to sit, stand and
> or walk, lift or even alternately sit and stand.

(R. 30 (citation omitted).)   The ALJ further found that Plaintiff's assertion that lifting 10

pounds "would cause her to 'drop to her knees due to pain'" to be exaggerated where she

also testified that she could lift a gallon of milk, only 1.4 pounds lighter. (R. 30, 105-06.)

Similarly, Plaintiff's testimony that she could not concentrate on television programs was

inconsistent with her assertion that she reads novels. (R. 30, 102, 107-08.) The ALJ also

noted that, by her own admission, Plaintiff could prepare meals, do dishes and laundry, grocery shop with her mother, could attend to her personal care with the exception of washing her hair, and occasionally went out with friends for coffee. (R. 30.) Although Plaintiff argues that these asserted inconsistencies can give rise to different interpretations, where, as here, the ALJ identified the specific record-based reasons for his ruling, it is not the function of the reviewing court to second-guess the credibility evaluation. Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (citing SSR 96-7p, 61 Fed. Reg. 34,483 at 34,486 (1996)); Crofoot v. Commissioner of Social Sec., No. 1:12-cv-521(GLS/ESH), 2013 WL 5493550, *12 (N.D.N.Y. Sept. 30, 2013).

13.    Plaintiff's final argument is that the ALJ erred in relying on Medical-Vocational Rule 201.27 rather than calling a vocational expert to assist in determining whether Plaintiff was disabled.  The Medical-Vocational guidelines were promulgated "[t]o improve both the uniformity and efficiency of th[e disability] determination." Heckler v. Campbell, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983); Bradley v. Astrue, No. 12-CV-6205, 2014 WL 2520690, *10 (W.D.N.Y. Mar. 28, 2014).  The guidelines relieve the need to rely on vocational expert testimony, and its use is appropriate unless "there is evidence that the claimant's nonexertional limitations 'so narrow [her] possible range of work as to deprive [her] of a meaningful employment opportunity." Taylor v. Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (quoting Bapp v. Bowen, 802 F.2d 601, 605–06 (2d Cir.1986)).

Plaintiff is correct that pain is a relevant nonexertional limitation. See 20 C.F.R. § 416.969a(c)(1).  Contrary to Plaintiff's argument that the ALJ failed to consider the limiting effect of pain, the ALJ expressly evaluated Plaintiff's testimony that her back and ankle pain limited her ability to sit, stand, walk, and concentrate. (R. 27, 30; see 49-61, 77-108.) Indeed, the ALJ's finding that Plaintiff was limited to sedentary work reflects a partial

crediting of Plaintiff's subjective pain complaints. (R. 30.)  As concluded above, there is no reason to disturb the ALJ's determination not to further credit Plaintiff's allegations, particularly where the ALJ's RFC findings are consistent with Dr. Clerk's treatment records for Plaintiff.  (See, e.g. R. 427 (January 2011 note that Plaintiff's was exercising at home); 433 (April 2011 note that Plaintiff's pain was "well controlled with current pain medication").

14.     For the foregoing reasons, and upon a review of the record as a whole, the Court concludes that the ALJ's determination is supported by substantial evidence. Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   June  23, 2014
         Buffalo, New York

                                          /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                             Chief Judge
                                       United States District Court